## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 16-cv-61220-BLOOM/Valle

ZURICH AMERICAN INSURANCE COMPANY,

      Plaintiff,

v.

NATIONAL SPECIALTY INSURANCE COMPANY,

      Defendant.

_____/

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Motions for Summary Judgment filed by Plaintiff Zurich American Insurance Company ("Zurich"), ECF No. [27], and Defendant National Specialty Insurance Company ("National"), ECF No. [19], (collectively, the "Motions"). The Court has carefully reviewed the Motions, the record, all supporting and opposing filings, the exhibits attached thereto, and is otherwise fully advised in the premises. For the reasons that follow, Zurich's Motion for Summary Judgment is granted and National's Motion for Summary Judgment is denied.

### I.   BACKGROUND

#### A.  The Underlying Lawsuit

Mikhael Maroudis ("Maroudis"), an employee of Diner 84, Inc. ("Diner 84"), filed a lawsuit against Davie Plaza, LLC ("Davie Plaza") in the Seventeenth Judicial Circuit in and for Broward County, Florida ("Underlying Lawsuit"). ECF No. [25] (Pl. Ctr. Stat. Facts) ¶1

("Undisputed Facts")[1]; ECF No. [27-1]. Maroudis later passed away from causes unrelated to the Underlying Lawsuit, and his personal representative pursued these claims on behalf of Maroudis's estate.  Undisputed Facts ¶1.

The Second Amended Complaint filed in the Underlying Lawsuit alleged that, on June 22, 2007, Maroudis's supervisor told him to climb onto the roof of Diner 84 to repair a leak.[2]  *Id.* ¶4.  To do so, Maroudis's supervisor instructed him to use Diner 84's ladder, climb to the first level of the roof, and then use the same ladder to climb onto the second level. *Id.* ¶5.  Maroudis positioned the ladder one foot outside of Diner 84's rear kitchen door and leaned the top of the ladder against the building.  *Id.* ¶6, 7.  He then placed the bottom of the ladder on an uneven surface that divides the asphalt from the concrete. *Id.* ¶7; Def. Stat. Facts ¶2(e); ECF No. 20-1 at 57-58, 65, 80, 89-90, and 99-101.  After climbing onto Diner 84's roof and taking care of the leak, Maroudis descended the ladder, and as he did so, it shifted and caused him to fall to the ground.  Undisputed Facts ¶3, 8; ECF No. [27-2] ¶12-14.

Maroudis pursued a negligence claim against Davie Plaza to recover for personal injuries, alleging that Davie Plaza "failed to provide a reasonably safe premises at that time that it turned over the property to its tenant."  ECF No. [19] ("Def. Stat. Facts") ¶2(f).  The Underlying Lawsuit culminated in a jury trial, and on September 11, 2015, a jury entered a verdict in the

---

[1] Consistent with Rule 56.1(a) of the Local Rules of the Southern District of Florida, Zurich's Response to Defendant's Statement of Undisputed Material Facts contains a Counterstatement of Undisputed Material Facts, consisting of 19 paragraphs.  *See* ECF No. [25]. Additionally, Zurich filed a Statement of Undisputed Material Facts in support of its Motion for Summary Judgment, which is identical to its Counterstatement of Undisputed Material Facts with the exception of paragraph 2.  *See* ECF No. [26]. In its Reply, ECF No. [29], National did not controvert *any* of the facts Zurich submitted in its Statement of Undisputed Material Facts or in its Counterstatement of Undisputed Material Facts.  Local Rule 56.1(b) provides that "[a]ll material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record."  *See* S.D. Fla. L.R. 56.1(b).  To the extent that record evidence supports Zurich's Statement of Undisputed Material Facts and Counterstatement of Undisputed Material Facts, these facts are deemed admitted and are undisputed.

[2] The owner of Diner 84, "George," hired Maroudis to perform maintenance and carpentry work at Diner 84. *Id.* ¶2.

amount of $15,212,930.77. Def. Stat. Facts ¶2(h); ECF No. [19-3]. The jury found that the negligence of Davie Plaza, "84 Diner" and Maroudis were a legal cause of loss, injury or damage to Maroudis. *Id.* In apportioning liability, the jury found Davie Plaza 98% at fault while Maroudis and "84 Diner" were each 1% at fault. *Id.*

### B.  The Insurance Policies

National issued a commercial general liability policy to Diner 84, No. RCE400595-07, in effect from June 14, 2007 to June 14, 2008 with policy limits of $1,000,000 per occurrence and $2,000,000 in the aggregate ("National policy"). Undisputed Facts ¶9; Def. Stat. Facts ¶2(b); ECF No. [27-3] at 3. The National policy contains an Additional Insured-Managers and Lessors of Premises Endorsement ("Endorsement") which, on July 25, 2007, was amended to specifically reference Davie Plaza. Undisputed Facts ¶10, 11; Def. Stat. Facts ¶2(b); ECF No. [27-3] at 2. The Endorsement provides as follows:

> WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:
>
> This insurance does not apply to:
>
> 1.  Any "occurrence" which takes place after you cease to be a tenant in that premises.
>
> 2.  Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

Undisputed Facts ¶11; ECF No. [27-3] at 91. The Endorsement identifies the premises leased to Diner 84 as "11432 W STATE RD 84 FT. LAUDERDALE, FL 33325." ECF No. [27-3] at 91.

In addition, Davie Plaza is a named insured under a commercial general liability insurance policy, No. GLO8445651-07, issued by Zurich and in effect from June 1, 2007 to June

3

1, 2008 ("Zurich policy").   Undisputed Facts ¶16; ECF No. [27-4]. Both the Zurich and the

National policies contain identical "Other Insurance" clauses that, in pertinent part, state:

> 4. Other Insurance
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A and B, our obligations are limited as follows:
>
> a.   Primary Insurance
>
> This insurance is primary except when paragraph b. below applies.   If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.   Then, we will share with all that other insurance by the method described in c. below.
>
> b.   Excess Insurance
>
> The insurance is excess over:
>
> . . .
>
> (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.
>
> When this insurance is excess, we will have no duty under Coverage A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit."   If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Undisputed Facts ¶15.

On July 27, 2011, Zurich's counsel sent a letter to National and Diner 84 in which it

tendered Davie Plaza's defense and indemnity for the claims in the Underlying Lawsuit.

Undisputed Facts ¶17.  National declined to defend or indemnify Davie Plaza under the National

policy, stating that Maroudis's incident occurred in a "Common Area" under the lease between

Diner 84 and Davie Plaza.  *Id.* ¶18.  To date, Zurich has incurred $168,502.95 in fees and costs relating to the defense of the underlying lawsuit.  *Id.* ¶19.[3]

### C.  The Lease

On November 28, 2001, TNA Enterprises, Inc. d/b/a 84 Diner entered into a lease agreement with Davie Plaza for the lease of certain space located at 11426 State Road in Davie, Florida ("the Lease").  Def. Stat. Facts ¶2(a); ECF No. [19-1] at 1, 6.[4]  The Lease contains the following definitions:

1.1 "Common Area"

All areas and facilities in the Shopping Center designated for the general use, in common, of tenants of the Shopping Center, including the Tenant hereunder, its officers, agents, employees and customers.  Common areas shall include, without limitation, to the extent provided, the parking areas, sidewalks, roadways, loading platforms, restrooms, ramps and landscaped areas.

1.2 "Premises"

That certain space located in a building erected or to be erected in the Shopping Center containing approximately 1,283 square feet of Floor Area identified as a

---

[3] Zurich submitted the Supplemental Affidavit of Jackie Ward as an exhibit to its Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment.  *See* ECF No. [31].  In this affidavit, Ms. Ward supplements the amount of fees and costs Zurich has incurred to date in the defense of the Underlying Lawsuit.  *Id.*  Local Rule 7.1(c) provides that a reply memorandum "shall be strictly limited to rebuttal of matters raised in the memorandum in opposition without re-argument of matters covered in the movant's initial memorandum of law."  S.D. Fla. L.R. 7.1(c).  "A reply memorandum may not raise new arguments or evidence, particularly where the evidence was available when the underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence."  *Intra-Lock Int'l, Inc. v. Choukron*, No. 14-cv-80930, 2015 WL 1268278, at *1 (S.D. Fla. March 19, 2015)(quoting *Baltzer v. Midland Credit Mgmt., Inc.*, No. 14–20140–CIV, 2014 WL 3845449, at *1 (S.D. Fla. Aug. 5, 2014)).  There is no indication that the information provided in Ms. Ward's Supplemental Affidavit was not known to Zurich when it filed its Motion for Summary Judgment.  The Court, therefore, declines to consider the Supplemental Affidavit for purposes of resolving the Motions.

[4] Zurich objects to the Second Amendment to Lease dated May 11, 2006 on the grounds that it is not a true and accurate copy of the original lease dated October 31, 1994 or a subsequent lease dated May 6, 1997.  ECF No. [26] ¶2.  In its Motion for Summary Judgment, National does not rely upon any language from those leases as it only quotes language from a lease dated November 28, 2001.  ECF No. [19] ¶2(a).  Zurich does not object to the language in the November 28, 2001 lease.  ECF No. [26] ¶2.  In fact, Zurich stipulates that "[f]or purposes of this motion, [Zurich] agrees that the terms and conditions contained in the Lease annexed to National Specialty's MSJ as Defendant's Exhibit 'A' are similar or identical to those contained in the 1994 Main Agreement and 1997 Main Lease."  *Id.*

portion of Bay 25 on the site plan (the "Site Plan") attached hereto as Exhibit "8" and by this reference incorporated herein.

ECF No. [19-1] at 6.

The Lease also contains the following language involving control of the "Common Area":

9.1.    Control of Common Areas by Landlord

All automobile parking areas, driveways, entrances and exits thereto, and other facilities furnished by Landlord in or near the Shopping Center, including employee parking areas, the truck way or ways, loading docks, package pick-up stations, pedestrian sidewalks and ramps, landscaped areas, exterior stairways, and other areas and improvements provided by landlord for the general use, in common, of tenants, their officers, agents, employees and customers, shall at all times be subject to the exclusive control and management of Landlord, and Landlord shall have the right from time to time to establish, modify and enforce reasonable rules and regulations with respect to all facilities and areas mentioned in this Article.  Landlord shall have the right to construct, maintain and operate lighting facilities on all said areas and improvement from time to time to change the area, level, location and arrangement of parking areas and other facilities hereinabove referred to and to restrict parking by tenants, their officers, agents and employees to employee parking areas.  Landlord shall not have any duty to police the traffic in the parking areas.

ECF No. [19-1] at 20.

**D.  The Declaratory Action**

Pursuant to its right of subrogation, Zurich filed a Complaint for Declaratory Relief and Damages in this Court seeking a declaration that Davie Plaza is as an additional insured under the National policy (Count I), that National is obligated to defend and pay the defense costs of Davie Plaza for the Underlying Lawsuit on a primary and non-contributory basis (Count II), and that National is obligated to indemnify Davie Plaza for any liability in the Underlying Lawsuit on a primary and non-contributory basis (Count III).  *See* ECF No. [1]. In addition, Zurich seeks damages arising from National's alleged breach of contract with Davie Plaza (Count IV). National and Zurich filed cross-motions for summary judgment on January 3, 2017 and January

23, 2017 respectively.  *See* ECF Nos. [19] and [27]. The parties' Responses and Replies timely followed.  *See* ECF Nos. [24], [29], and [31].

## II.    LEGAL STANDARD

The parties have filed and briefed cross-motions for summary judgment on the same legal issue – whether Davie Plaza is an additional insured under the National policy and whether National has a duty to defend and indemnify Davie Plaza for Maroudis's claim in the Underlying Lawsuit.  A district court applies the same legal standards when ruling upon cross-motions for summary judgment as it does when only one party files a motion.  *See Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11581 v. Waveblast Watersports, Inc.*, 80 F. Supp. 3d 1311, 1316 (S.D. Fla. 2015).  "Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts."  *Id.* (quoting *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1243 ((N.D. Ga. 2014)).

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations.  *See* Fed. R. Civ. P. 56(c).  An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party."  *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Id.* (quoting *Anderson*, 477 U.S. at 247-48).  The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor.  *See Davis v.*

*Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, a court cannot grant summary judgment unless it is satisfied that all of the evidence on the record supports the uncontroverted material facts that the movant has proposed. *See Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## III.    DISCUSSION

Moving for summary judgment, Zurich states that it qualifies as an additional insured under the National policy and that Davie Plaza is, therefore, entitled to a defense and indemnity from National for Maroudis's claims in the Underlying Lawsuit.  In response and in its own Motion for Summary Judgment, National maintains it does not owe Davie Plaza a defense or indemnity as Davie Plaza is not an additional insured under the language of the Endorsement. Because the parties filed cross-motions for summary judgment on the same legal issues, the Court will address the Motions together.

### A.  Construction of an Insurance Policy

An insurer's duty to defend arises from the insurance contract and policy. *See Allstate Ins. Co. v. RJT Enters., Inc.*, 692 So. 2d 142, 144 (Fla. 1997) ("[I]f there is no contractual duty to defend in the parties' contract then there is no duty to defend.").  That is, an insurer's duties toward its insured arise from the legal effects of the relevant policy provisions.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Brown*, 787 F. Supp. 1424, 1427 (S.D. Fla. 1991). Therefore, summary judgment may be "appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law."  *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1358 (M.D. Fla. 2001) (citing *Talat Enters., Inc. v. Aetna Life & Cas.*, 952 F. Supp. 773 (M.D. Fla. 1996)).  "An insurer's duty to indemnify is narrower than its duty to defend and must be determined by analyzing the policy coverages in light of the actual facts in the underlying case." *Sinni v. Scottsdale Insurance Co.*, 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2010) (citing *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1077 n. 3 (Fla. 1998) and *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996)).

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy." *Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, No. 3:05-cv-850-J-32TEM, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)). As with all contracts, the interpretation of an insurance contract – including determining whether an insurance provision is ambiguous – is a question of law to be determined by the court. *Id.*; *Travelers Indem. Co. of Illinois v. Hutson*, 847 So. 2d 1113 (Fla. 1st DCA 2003) (stating that whether an ambiguity exists in a contract is a matter of law).

Further, "[u]nder Florida law, insurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties-not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002)(quoting *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249 (Fla. 4th DCA 1972); *see also Gilmore v. St. Paul Fire & Marine Ins.*, 708 So. 2d 679, 680 (Fla. 1st DCA 1998) ("The language of a policy should be read in common with other policy provisions to accomplish the intent of the parties."). However, if there is more than one reasonable interpretation of an insurance policy, an ambiguity exists and it "should be construed against the insurer." *Pac. Emp'rs Ins.*, 2007 WL 2900452, at *4 (citing *Purelli v. State Farm Fire & Cas. Co.,* 698 So. 2d 618, 620 (Fla. 2d DCA 1997)).

A coverage clause is generally interpreted as broadly as possible to ensure the greatest amount of insurance coverage. *Id.* at *5 (citing *Westmoreland v. Lumbermens Mut. Cas. Co.*,

704 So. 2d 176, 179 (Fla. 5th DCA 1997)).  To determine the parties' contractual intent, a court

may only consider the language in the insurance policy, unless the policy is ambiguous.

*Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., Ltd.*, 854 F.2d 1264, 1267 (11th

Cir. 2001)(citing *Towne Realty v. Safeco Ins. Co. of Am.*, 854 F.2d 1264, 1267 (11th Cir. 1988)).

"As a general rule, in the absence of some ambiguity, the intent of the parties to a written

contract must be ascertained from the words used in the contract, without resort to extrinsic

evidence." *Id.* (quoting *Lee v. Montgomery*, 624 So. 2d 850, 851 (Fla. 1st DCA 1993)).

## B.  Additional Insured

To determine whether Davie Plaza is an additional insured under the National Policy, the

Court begins its analysis with an examination of the source of coverage itself – the Endorsement.

*See Mindis Metals v. Transp. Ins. Co.*, 209 F.3d 1296, 1298 (11th Cir. 2000)("As in any dispute

over insurance coverage, the Court begins by examining the source of coverage itself—the

general promises of coverage made in the insurance policy.").  The Endorsement provides as

follows:

> WHO IS AN INSURED (Section II) is amended to include as an insured the
> person or organization shown in the Schedule but only with respect to liability
> arising out of the ownership, maintenance or use of that part of the premises
> leased to you and shown in the Schedule and subject to the following additional
> exclusions:
>
> This insurance does not apply to:
>
> 1.  Any "occurrence" which takes place after you cease to be a tenant in that
>     premises.
>
> 2.  Structural alterations, new construction or demolition operations performed by
>     or on behalf of the person or organization shown in the Schedule.

Undisputed Facts ¶11; ECF No. [27-3] at 91.  It is undisputed that Davie Plaza is listed on the

Endorsement's Schedule.  The disagreement between the parties centers on whether Davie

Plaza's liability "aris[es] out of the ownership, maintenance or use of that part of the premises leased to" Diner 84.

### 1.  Arising out of

Resolution of this coverage dispute requires an understanding of the phrase "arising out of" in the insurance context.  The Florida Supreme Court has defined "arising out of" as "'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to,' or 'having a connection with.'"  *Taurus Holdings, Inc. v. U.S. Fid. Guar. Co.*, 913 So. 2d 528, 539 (Fla. 2005) (quoting *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996)).  It "requires more than a mere coincidence between the conduct . . . and the injury," such as a causal connection or a relationship.  *Id.*  Significantly though, "arising out of" is not synonymous with "caused by."  *Id.*; s*ee also Hilton Hotels Corp. v. Emp'r Ins. Of Wasau*, 629 So. 2d 1064 (Fla. 3d DCA 1994) (quoting *O'Dwyer v. Manchester, Ins. Co.*, 303 So. 2d 347, 348 (Fla. 3d DCA 1974)) ("We are mindful that 'arising out of' is not synonymous with the words 'caused by,' but is given a broader meaning in determining whether coverage applies.").  Having defined this phrase, the Court next addresses whether Davie Plaza's liability for the Underlying Lawsuit arises from the "ownership, maintenance or use" of the premises leased to Diner 84.[5]

### 2.  Ownership, Maintenance or Use

In their respective Motions, the parties focus their coverage positions on different terms within the Endorsement.  Zurich argues that Maroudis's claim arose from his performance of a "maintenance task" on the roof of Diner 84.  *See* ECF No. [27] at 7. National takes the position that the incident did not arise out of the "use" of the leased premises, but it does not address

---

[5] The Endorsement identifies the premises leased to Diner 84 as "11432 W STATE RD 84 FT. LAUDERDALE, FL 33325."   ECF No. [27-3] at 91. The parties do not dispute that this address corresponds to Diner 84.  *See* ECF No. [19] ¶2(a).

12

whether Davie Plaza's liability arises out of the "maintenance" of the premises.  For the reasons explained below, the Court agrees with Zurich's interpretation of the Endorsement, finding that Davie Plaza's liability arises out of its "maintenance" of the leased premises.

In analyzing this issue, the Court must construe the words in the Endorsement according to their ordinary meaning.  *Garcia*, 473 F.3d at 1135; *see also Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d at 736 (The "terms of an insurance policy should be taken and understood in their ordinary sense.").  The parties have not cited to any cases from Florida's appellate courts where the word "maintenance" was construed within the context of an insurance policy.  Zurich, however, cites to an analogous and instructive appellate opinion from New York.[6]  *See Maldonado v. Kissm Realty Corp.*, 796 N.Y.S. 2d 619 (N.Y. App. Div. 2005).  In *Maldonado*, the plaintiff in the underlying claim fell from an I-beam while performing maintenance work on his employer's HVAC units and sustained injuries.  *Id.* at 627-28.  The owner of the property claimed it was an additional insured on the lessee's general liability policy because its liability arose out of the lessee's ownership, maintenance, or use of the premises.  *Id.* at 627.  Agreeing with the owner, the appellate court focused on the term "maintenance" and determined the owner was an additional insured because its liability arose from the lessee's assumption to maintain the HVAC units on the roof.  *Id.* at 628.

In this case, Diner 84 hired Maroudis to perform maintenance and carpentry work at the restaurant.  Undisputed Facts ¶2.  On June 22, 2007, Maroudis's supervisor instructed him to climb onto the roof of Diner 84 and repair a leak.  *Id.* ¶4; ECF No. [20-1] at 24.  In order to complete the repair, Maroudis's supervisor instructed him to use Diner 84's ladder to climb onto

---

[6] When resolving a coverage dispute, a federal court sitting in diversity will look to the Florida Supreme Court for definite guidance on a subject.  *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004).  In the absence of a Florida Supreme Court decision on point, federal courts will follow relevant decisions from Florida's intermediate appellate courts.  *Id.*  If there are no such opinions, a federal court may examine case law from other jurisdictions that interpret similar policy provisions.  *Id.*

the first level of the roof and then use the same ladder to climb to the second level.  Undisputed Facts ¶5; ECF No. [20-1] at 32.  Maroudis then placed the ladder one foot outside of Diner 84's rear kitchen door, leaned the top of the ladder against the building and placed the bottom of the ladder on the dividing line between the asphalt and the concrete.  Undisputed Facts ¶6, 7.  Next, he climbed up the ladder to the roof above Diner 84's kitchen, raised the ladder onto the first roof level, leaned it against another wall, and climbed to the second roof level above Diner 84's restaurant.  ECF No. [20-1] at 48.  Once there, he cleaned and unclogged the rooftop drain and pushed the standing water with a broomstick.  *Id.* at 52-53.  After he was done, Maroudis used the ladder to descend from the second roof level to the first roof level over the kitchen.  *Id.* at 53. He then lowered the ladder to the ground level and descended.  *Id.* at 53-54.  After taking two steps down, the ladder shifted and caused Maroudis to fall on the ground and sustain injuries. Undisputed Facts ¶3; ECF No. [20-1] at 54.

Applying the language of the Endorsement to the undisputed facts, the Court concludes that Davie Plaza's liability arose from the maintenance of the leased premises.  It is undisputed that Maroudis's fall occurred as he descended a ladder immediately after performing maintenance on the rooftop directly above Diner 84.  Maroudis's claims against Davie Plaza originated from, were incident to, or had a connection with his attempt to repair a leak.  Put another way, it was only after Maroudis cleaned out and unclogged the rooftop drain and swept away the accumulated water in an effort to repair the leak that Maroudis fell as he descended to the ground below.

In support of its Motion for Summary Judgment, National relies upon *Hilton Hotels Corp. v. Employers Ins. of Wausau, 629 So. 2d 1064 (Fla. 3rd DCA 1994)*, to argue that Davie Plaza's liability for the Underlying Lawsuit did not arise out of Diner 84's ownership,

maintenance, or use of the leased premises.  ECF No. [19] at 13-16.  The claim in *Hilton Hotels* involved a slip-and-fall incident in a hotel lobby in which the plaintiff fell on her way to work at the gift shop.  *Hilton Hotels*, 629 So. 2d at 1065.  In its third-party complaint against the insurer, the hotel claimed it was an additional insured by virtue of an endorsement providing coverage for "liability arising out of the ownership, maintenance or use of" the gift shop.  *Id.* at 1064-65.  The similarities between this case and *Hilton Hotels* end there.  Interpreting the endorsement, the Florida Third District Court of Appeal analyzed whether the accident arose out of the use of the premises – not the maintenance of the premises.  *Id.* at 1065.  Indeed, the appellate court's analysis focused on the distance between the leased premises and the fall, the lack of a physical connection between the accident and the premises, and the coincidental nature of the fall on the plaintiff's way to work.  *Id.*  There, maintenance was not an issue.  *Id.* Unlike *Hilton Hotels*, here, Maroudis was at work, was physically on the leased premises, and was in the process of performing his maintenance duties when his injury occurred.  National's reliance upon *Hilton Hotels* is, therefore, misplaced.

Although Zurich argues that Davie Plaza's liability arises out of the "maintenance" of the leased premises, National focuses on the "use" of the premises without directly addressing Zurich's argument. "In insurance coverage cases under Florida law, courts look at the insurance policy as a whole and *give every provision its 'full meaning and operative effect*.'"  *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (quoting *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002)) (emphasis added).  The Court must give every provision in the Endorsement full meaning, including the term "maintenance."  Because the Court finds that Davie Plaza's liability arose out of the maintenance of the leased premises, Davie Plaza is an additional insured under National's policy.

Also in support of its position that Zurich is not an additional insured, National relies upon the Lease, arguing that Maroudis was injured in the "Common Area" within Davie Plaza's exclusive control.  ECF No. [19] at 9.  National reasons that, because Davie Plaza's liability "emanates from, and is incident to, the conditions on the concrete surface common area," Davie Plaza's liability arises from the physical condition of the "Common Area" and cannot be covered under the Endorsement.  *Id.* at 11.  Zurich, on the other hand, objects to any consideration of the Lease and states that the Lease is irrelevant to the determination of insurance coverage.  ECF No. [27] at 12.  "Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy."  *Pac. Emp'rs Ins. Co.*, 2007 WL 2900452, at *4 (citing *Graber*, 819 So. 2d at 842).  In a coverage analysis, a court may only consider the language of the insurance policy, unless there is an ambiguity.  *Fireman's Fund Ins. Co.*, 854 F.2d at 1267 (citing *Towne Realty*, 854 F.2d at 1267).  If the language in the policy is unambiguous, the court cannot resort to extrinsic evidence to interpret the contract.  *Id.*; *see also Container Corp. of Am. v. Maryland Cas. Co.*, 707 So. 2d 733, 735 (Fla. 1998) ("The language of the policy is controlling.")

If the Court considered the Lease, it would be resorting to extrinsic evidence because the Endorsement does not reference or otherwise incorporate its terms.  Consideration of such evidence may only occur if the language within the Endorsement is ambiguous.[7]  Not only does the Court find the language in the Endorsement unambiguous, but National itself agrees the policy language is unambiguous.  *See* ECF No. [29] at 7-8 ("Zurich, however, appears to disregard the fact that this specific language has already been interpreted in Florida in *Hilton*

---

[7] It would also improperly stretch principles of contract interpretation to consider a contract signed between Davie Plaza and Diner 84 as probative evidence of the intent behind the insurance contract between National and Diner 84.  National is not a party to the Lease.

*Hotels* and was deemed to be unambiguous."). Therefore, the Court cannot consider the Lease as part of its interpretation of the policy.

Even if the Court considered the Lease, it does not change the outcome. The question here is whether Davie Plaza's liability arises out of the ownership, maintenance, or use of the leased premises. *See* ECF No. [19] at 9. Florida's courts have broadly construed the phrase "arising out of." *Taurus Holdings, Inc.*, 913 So. 2d at 539. National, focusing on the Lease and on whether Maroudis's fall occurred in the "Common Area" versus the "Premises," applies the language of the Endorsement in a way that is inconsistent with the definition of "arising out of." Indeed, National takes the position that "the unstable footing of the ladder due to the condition of the concrete surface" *caused* Maroudis to fall and sustain injuries and that, because the ladder was located in a "Common Area," Davie Plaza is not an additional insured.[8] *See* ECF No. [19] at 10-11, 14-15.

However, the language in the Endorsement is much broader in scope. An analysis focusing on the cause and location of Maroudis's fall does not track the language of the Endorsement or Florida's definition of the phrase "arising out of." The appropriate analysis here is whether Davie Plaza's liability in the Underlying Lawsuit arises out of the ownership, maintenance or use of the leased premises, and, for the reasons explained above, the Court concludes that it does.

The parties also dispute whether the Court may consider the verdict form entered in the Underlying Lawsuit to decide the issues on summary judgment. National argues that the jury

---

[8] As further support for its position, National relies upon a Colorado appellate decision, *Travelers Prop. Cas. Co. of Am. v. Farmers Inc. Exch.*, 240 P.3d 521, 523-24 (Colo App. 2010). *See* ECF No. [19] at 12. In *Travelers*, the Colorado court applied a narrow proximate cause analysis to the phrase "arising out of." *Id.* ("To demonstrate that an injury arose out of the ownership, maintenance, or use of the insured property . . . [t]here must be an unbroken causal chain between the use and the injury."). Such a narrow application of the phrase "arising out of the ownership, maintenance or use" of the leased premises is inconsistent with Florida law.

already determined whether Davie Plaza's liability arose from the operation, maintenance, or use of the premises leased to Diner 84. Zurich objects to its relevance in these proceedings. ECF No. [31] at 4-5. The interpretation of an insurance contract, which is the central issue in this lawsuit, is a question of law to be determined by the Court. *Pac. Emp'rs Ins. Co.*, 2007 WL 2900452, at \*4 (citing *Graber*, 819 So. 2d at 842). Despite its reliance on the verdict form, National does not cite to any case law finding that a jury's factual determination of an underlying claim is pertinent to the matter of insurance coverage.

Even were the Court to consider the verdict form, there is no indication that the jury made a factual finding on the critical issue - whether Davie Plaza's claims arose from the ownership, maintenance or use of the leased premises. The jury was merely asked to determine whether there was "negligence on the part of DAVIE PLAZA, LLC, which was a legal cause of loss, injury or damage to MIKHAEL MAROUDIS." ECF No. [19-3]. The jury's finding that Davie Plaza was negligent in the Underlying Lawsuit does not resolve whether Davie Plaza is an additional insured under the language of the Endorsement. Thus, the jury's verdict in the Underlying Lawsuit does not affect the Court's analysis.

### C.  Davie Plaza's Negligence

Davie Plaza's status as an additional insured under National's policy does not depend upon whether it was negligent. As explained below, the Endorsement does not contain any limiting language that would exclude coverage for Davie Plaza's own negligence. As Davie Plaza's liability arose out of the maintenance of the leased premises, it is an additional insured regardless of whether it acted negligently.

The Court must next address whether the Endorsement provides coverage to Davie Plaza for its own negligence. National argues that its policy does not provide any coverage to Davie

Plaza for its own negligence while Zurich takes the opposite position.  To answer this question, it is again necessary to analyze the language of the Endorsement.  When an endorsement does not expressly exclude coverage for the additional insured's negligence, Florida courts have broadly construed the policy to cover instances of negligence.  *See Container Corp. of Am*, 707 So. 2d at 736 (emphasis added) ("Because the endorsement in the instant case contains no limiting language, we hold that Container was entitled to coverage under the Maryland policy *for its own negligence* arising out of 'operations at operations site by Southern Contractors.'"); *Koala Miami Realty Holding Co. v. Valiant Ins. Co.*, 913 So. 2d 25, 27 (Fla. 3d DCA 2005) (holding that endorsement provided coverage for additional insured's negligence because the policy did not contain any language limiting coverage to the named insured's negligence); *see also Tropical Park, Inc. v. U.S. Fid. & Guar. Co.*, 357 So. 2d 253, 256 (Fla. 3d DCA 1978) ("The law of Florida is well-settled that a contract of insurance prepared by an insurance company must be construed liberally in favor of the insured and strictly against the insurance carrier.").

In this case, the Endorsement does not contain any language that expressly excludes coverage for Davie Plaza's negligence.  Undisputed Facts ¶11; ECF No. [27-3] at 91.  Similarly, the Endorsement does not contain any language limiting coverage to Davie Plaza's vicarious liability for Diner 84's negligence.  *Id.*  The language in the National policy instead broadly covers Davie Plaza for "liability arising out of the ownership, maintenance or use of that part of the premises leased to" Diner 84.  Thus, the Endorsement indeed covers Davie Plaza for its own negligence as an additional insured under the National policy.

### D.  Duty to Defend

Now that the Court has interpreted the Endorsement, it must determine whether National owes Davie Plaza a defense for Maroudis's claims in the Underlying Lawsuit.  "Under Florida

law, the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." *State Farm*, 393 F.3d at 1230 (citing *Amerisure Ins. Co. v. Gold Coast Marine Distrib., Inc.*, 771 So. 2d 579, 580-81 (Fla. 4th DCA 2000)).   Upon a review of the underlying complaint, if the allegations state facts that bring the claim within the policy's coverage, the insurer is required to defend the insured regardless of the claim's merits.   *Id.*   All doubts relating to the duty to defend must be resolved in the insured's favor.   *Id.*   In resolving a coverage question involving the duty to defend, a court must examine the most recent amended pleading instead of the original pleading.   *Id.*   When it "contains allegations partially within and partially outside the scope of coverage, the insurance carrier is required to defend the entire suit."   *Tropical Park, Inc.*, 357 So. 2d at 256; *see also McCreary v. Florida Residential Prop. & Cas. Joint Underwriting Assoc.*, 758 So. 2d 692, 695 (Fla. 4th DCA 2000) ("[A]n insurer must defend a lawsuit against its insured if the underlying complaint, when fairly read, alleges facts which create potential coverage under the policy.").

As part of the summary judgment record, the parties have submitted both the original Complaint and the Second Amended Complaint in the Underlying Lawsuit.   In conformity with Florida law, the Court will consider the most recent amended pleading – the Second Amended Complaint – to resolve the question of National's duty to defend Davie Plaza.

The Second Amended Complaint contains the following allegations:

10. On or about June 22, 2007, MIKHAEL MAROUDIS (hereinafter referred to as the "Decedent"), an employee of 84 Diner and business invitee of the Defendant DAVIE PLAZA, *was at 84 Diner attempting to repair a leaking roof. Decedent had been instructed by his supervisor to go onto the roof to see if he could stop or lessen the leak.*

20

11. To gain access to the roof Decedent placed a ladder against the exterior of Defendant's property near 84 Diner's rear entrance.  The feet of the ladder were resting on the surface of an exterior walkway/parking lot which was owned, operated and controlled by Defendant DAVIE PLAZA and which was not part of the premises leased by Decedent's employer 84 Diner.

12. The incident occurred at night and in the rain.  Prior to his accident, Decedent climbed up the aforesaid ladder to reach the property's roof.  The property's roof was so high that it required Decedent to reposition the ladder to reach all the way to the top.  *Decedent did in fact attend to the leak above his employer's diner and was on his way down the ladder when the accident occurred.*

13.  *As Decedent was climbing down the ladder, and after re-positioning the ladder,* it shifted due to a defect in the surface of the exterior walkway/parking lot.

14.  Decedent fell to the ground and was severely injured.  He was transported to the hospital where he remained for several days.

ECF No. [27-2] at 4 (emphasis added).

National maintains that it did not have a duty to defend Davie Plaza because its named insured, Diner 84, was not a named defendant in the underlying complaint and there were no allegations therein that implicated Diner 84.  *See* ECF No. [29] at 3.  Zurich counters that the duty to defend is not triggered by who is liable for the Underlying Lawsuit but by allegations in the underlying complaint that arise out of the ownership, maintenance of use of the leased premises.  *See* ECF No. [31] at 3-4.  The Court agrees with Zurich on this point.

According to the allegations in the Second Amended Complaint, Maroudis's supervisor instructed him to climb onto the roof of Diner 84 to repair a leak.  *Id.*  Consistent with those instructions, it was alleged that Maroudis climbed up to the roof to repair the leak, that he "attend[ed] to the leak above his employer's diner," and that as he descended from the rooftop, the ladder shifted, causing him to fall and sustain injuries.  *Id.* The Court finds that these allegations are consistent with liability arising out of the maintenance of the premises leased to

Diner 84.  Therefore, National owes Davie Plaza a duty to defend it in the Underlying Lawsuit as an additional insured.

### E.  Duty to Indemnify

In their respective Motions, the parties also dispute whether National owes Davie Plaza a right to indemnity for Maroudis's claims in the Underlying Lawsuit.  "The duty to indemnify is narrower than the duty to defend, and there must be a determination that coverage exists before a duty to indemnify arises."  *McCreary*, 758 So. 2d at 695 (quoting *Illinois Ins. Exch. v. Scottsdale Ins. Co.*, 679 So. 2d 355, 358 (Fla. 3d DCA 1996)).  In Section III(B) above, the Court concluded that Davie Plaza is covered as an additional insured under the Endorsement in the National policy.  For this reason, National owes Davie Plaza a duty to indemnify it for its liability in the Underlying Lawsuit.

### F.  Primary, Non-Contributory Duty

Zurich's Motion for Summary Judgment also seeks a declaration that National's policy provides the primary layer of coverage and that National is, therefore, required to pay for Davie Plaza's defense and indemnity on a primary, non-contributory basis.  In its Reply, National argues that Davie Plaza was not an additional insured and was, therefore, not entitled to any coverage at all.  *See* ECF No. [29] at 8.  National did not dispute Zurich's characterization of the "Other Insurance" clauses and did not otherwise dispute that it would be the primary insurer if Davie Plaza were deemed an additional insured.  *Id.*

Both Zurich and National's insurance policies contain the following "Other Insurance" clauses:

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A and B, our obligations are limited as follows:

c.   Primary Insurance

This insurance is primary except when paragraph b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in c. below.

d.   Excess Insurance

The insurance is excess over:

. . .

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverage A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit."  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Undisputed Facts ¶15.

When two insurance policies contain an "Excess Insurance" clause, but the "Excess Insurance" contingency in one of the policies does not apply, the latter policy will be primary. *See Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11581*, 80 F. Supp. 3d at 1321 (citing to *Keenan Hopkins Schmidt & Stowell Contractors, Inc. v. Cont'l Cas. Co.*, 653 F. Supp. 2d 1255 (M.D. Fla. 2009)).  In this case, Zurich and National's policies contain the same "Excess Insurance" contingency – if Davie Plaza is an additional insured under an endorsement on another insurance policy, that policy will provide primary coverage.  The Court has already determined that Davie Plaza is an additional insured under the Endorsement of the National policy.  As a result, the "Excess Insurance" contingency in paragraph 4(d)(2) of Zurich's policy is triggered, making National the primary insurer.  Given Davie Plaza's status as

an additional insured, National has a duty to defend and indemnify Davie Plaza in the Underlying Lawsuit on a primary, non-contributory basis.

## IV.    CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Zurich's Motion for Summary Judgment, **ECF No. [27]**, is **GRANTED**;

2. National's Motion for Summary Judgment, **ECF No. [19]**, is **DENIED**;

3. As to Count I, the Court finds that Davie Plaza is an additional insured under the National Specialty Policy in connection with the Underlying Lawsuit;

4. As to Count II, National is responsible for Davie Plaza's defense costs in the Underlying Lawsuit as an additional insured on a primary, non-contributory basis;

5. As to Count III, National must indemnify Davie Plaza in the Underlying Lawsuit as an additional insured on a primary, non-contributory basis;

6. As to Count IV, the parties are **ORDERED** to provide supplemental briefing addressing the amount of damages that may be awarded to Zurich. Zurich shall file its supplemental briefing no later than **April 10, 2017**.  National will thereafter have fourteen days to file a response and Zurich will have seven days to file a reply.

**DONE AND ORDERED** in Miami, Florida this 28th day of March, 2017.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Case No. 16-cv-61220-BLOOM/Valle

Counsel of Record